**FILED**

**DEC 23 2014**

Clerk, U.S. District and
Bankruptcy Courts

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL L. DAVIS,                                )
1717 Trinidad Ave NE                             )
Washington, DC 20002                             )
                    Pro Se Plaintiff             )

v                                                )

THE DISTRICT OF COLUMBIA                         )
1350 Pennsylvania Ave NW                         )
Washington, DC  2 0 0 0 4                         )
                                                 )
          Defendant                              )

Case: 1:14-cv-02187     Jury
Assigned To : Bates, John D.   Demand
Assign. Date : 12/23/2014
Description: Pro Se Gen. Civil

### <u>COMPLAINT</u>

Plaintiff brings this Review under the Administrative Procedures Act (APA): 5 U.S.C. 701-706,

action  to recover damages and civil penalties on behalf of the United States of America and

Plaintiff arising from false and/or fraudulent statements, records, and claims and/or cost reports

made or caused to be made by Defendants and/or their agents, employees, and co-conspirators in

violation of the Federal False Claims Act, 31 U.S.C. 3729, et seq., as amended (the "False

Claims Act" or FCA).

In addition, Plaintiff, appearing pro se, brings this action pursuant to 28 U.S.C. 1367, 28 U.S.C.

1651 (All Writs Act, seeking an order from this Honorable Court compelling Defendants to act

as required by applicable statutes and regulations.

### <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

## THE PARTIES

4. Plaintiff Michael L. Davis is an adult resident of the District of Columbia

5. The Respondent is Defendant District of Columbia,  a body corporate for municipal purposes organized pursuant to District of Columbia Code (D.C. Code") 1-102 (2001 ed.).

6. Maximus Inc., is a Reston, Virginia based for profit Corporation

7. The United States of America

## INTERVENORS

There are currently no interveners in this action

Amici Curiae

There are currently no Amici participants in this action

## RELATED CASES

A.      United States District Court for the District of Columbia

Michael L. Davis v U.S. Department of Health and Human Services, U.S. Department of Justice et al 1:12-cv-01246- JDB

B.      UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA Civil 1:06-cv-00972-GK, United States District Court Judge Kessler

C.      United States of America ex rel. Michael L. Davis v. District of Columbia (In the United States District Court for the District of Columbia, Case No. 1:06CV00629-JDB, United States District Court of Appeals 11-7039),

D.      United States of America ex rel. Michael L. Davis v District of Columbia (In the United States District Court for the District of Columbia, Case No 1:06CV00489

D.      U S DISTRICT COURT FOR THE DISTRICT OF COLUMBIA Civil

United States of America ex rel Michael L. Davis v District of Columbia, United States District Court for the District of Columbia1:06-0489, (United States District Court of Appeals No. 09-5427)

## AUTHORITIES, LAWS, REGULATIONS, Cites

1.  United States of America/Benjamin Turner ex. rel v Maximus Inc. (05-cv-01215)

2.  AUTHORITY: 42 U.S.C. 1396b(a)(6), 1396b(b)(3) and 1396b(q). id. § 3729(a)(1), id. § 3729(a)(2), id. § 3729(a)(3).

3.  Federal Rule 60(b)(3), by its express terms permits judgments to be set aside for fraud

4.  United States District Court for the District of Columbia Mem. Opp 3-31-14 (0629 JDB)

5.  Sec. 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy

6. False Claims Act, 31 U.S.C. §§ 3729-3733 id. § 3729(a), § 3730(b)(1), Id. § 3730(d).

7. Rockwell, 549 U.S. at 472.

8. The Criminal Health Care Fraud Statute (18 U.S.C. Section 1347) prohibits knowingly and willfully executing, or attempting to execute, a scheme or artifice: 42 CFR pt. 413 (1993), §§413.20(a) and 413.24

9. U.S. v. Prudden, 424 F.2d. 1021; U.S. v. Tweel, 550 F. 2d. 297, 299, 300 (1977): Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading.  D.C. Circuit had already decided a similar case, United States ex rel. Totten v. Bombardier Corp., 380 F. 3d 488 (CADC 2004).

10.  **The Criminal Health Care Fraud Statute (18 U.S.C. Section 1347)** prohibits knowingly and willfully executing, or attempting to execute, a scheme or artifice:

• To defraud any health care benefit program; or

To obtain (by means of false or fraudulent pretenses, representations, or promises) any of the money or property owned by, or under the custody or control of, any health care benefit program; in connection with the delivery of or payment for health care benefits, items, or services. Proof of actual knowledge or specific intent to violate the law is not required.

11. a. Section 1035. False statements relating to health care matters, 18 U.S.C. Section 1347, SPOLIATION OF EVIDENCE, Title 18 U.S.C. § 2. Principals, Sec. 1519. Destruction, alteration, or falsification of records (or in the Alternative "Fraud") 18 U.S. Code Chapter 47 - FRAUD AND FALSE STATEMENTS,

## JURISDICTIONAL STATEMENT AND VENUE

Michael L. Davis brings this action in the United States Court for the District of Columbia pursuant to : 28 U.S.C. 1331 and 5 U.S.C. 701, Section 702-706, Rule 65 (a)(1)(2), (b)(1)(A), (3), U.S.C. This Court has exclusive jurisdiction over this action pursuant to 5 U.S.C., Administrative Procedure Act (APA): 5 U.S.C. 701-706, 31 U.S.C. 3732 and 28 U.S.C 1331. The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1346, 1361, 28 U.S.C. 2201 (Declaratory Judgment Act), 28 U.S.C. 2202 (further relief), 28 U.S.C. 1367, the United States District Court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution and venue is proper pursuant to 28 U.S.C. 1391 (e).

 Defendants the District of Columbia Government is located in and transact business in this judicial District.  Therefore, venue is proper in this District.


**FACTUAL STATEMENT AND INTRODUCTION**

1. Plaintiff, Michael L. Davis ("Mr. Davis"), brings this action in order to recover damages and

civil penalties from the District of Columbia (the "District") for knowing retention of District of

Columbia Public Schools Federal Medicaid Reimbursement funds fraudulently obtained and

failure to notify the Centers for Medicare and Medicaid of overpayments (within the 60 day time

requirement) as required by the FCA and CMS Medicaid Reimbursement regulations) and

pursuant to the July 20, 2007 Court Approved Settlement and Deferred Prosecution Agreement

entered into by the United States Departments of Justice, Health and Human Services, Maximus

Inc., and the District of Columbia.


2. Plaintiff,  Michael L. Davis ("Mr. Davis"), brings this action in order to recover damages and

civil penalties from the District of Columbia (the "District") for knowing fraudulent retention of

District of Columbia General Hospital Federal Medicare payments and Medicaid Reimbursement

funds fraudulently obtained, falsification of State and Federal Medicare/Medicaid cost reports,

cost information reports, demands for payment, obstruction of Federal audits and failure to notify

the Centers for Medicare and Medicaid of overpayments (within the 60 day time requirement)

and/or non payment of Medicare/Medicaid funds drawn down on behalf of a provider,  as

required by the FCA and CMS Medicaid Reimbursement regulations) and pursuant to the July

20, 2007 Court Approved Settlement and Deferred Prosecution Agreement entered into by the

United States Departments of Justice, Health and Human Services, Maximus Inc., and the

District of Columbia.

3. Plaintiff, Michael L. Davis ("Mr. Davis"), brings this action of Civil penalties due to District of Columbia knowing submission of fraud and fraudulent statements, submission, willfully and knowingly not complying with the terms of 2007 Settlement Agreement which required the District of Columbia to return all Medicaid funds meeting the definitions contained in the Agreement as "unallowable", and thereby retaining Medicare and Medicaid funds fraudulently obtained. (See FCA U.S.C. 3729-33; Civil Monetary Penalties Law, 42 U.S.C. 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. 3801-12; or the common law theories of payment by mistake, unjust enrichment, and fraud, and any causes of action for which the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 CFR Part O, subpart 1, Sec. 0.45 (d) for the Covered Conduct.

4. Plaintiff, Michael L. Davis ("Mr. Davis"), brings this action under the APA, which treats an agency's failure to act as agency action, see 5 U.S.C. § 551(13), and 31 U.S.C. § 3729(a)(1)– (3);(7) (final three enforcement provisions impose liability for individuals who (i) are entrusted with federal money and fail to deliver or return the total amount, (ii) authorized to certify a receipt of property without actually knowing the verifying information contained within.

## FACTUAL ALLEGATIONS

1. Plaintiff alleges that the Federal Medicare and Medicaid programs were defrauded of an estimated amount exceeding 200 million dollars which the District of Columbia failed to report or repay within the federally mandated time period. These funds were drawn down using Medicare and Medicaid provider number assigned to the District of Columbia General Hospital.

2. Plaintiff alleges that the Federal Medicaid programs were defrauded of an estimated amount exceeding 100 million dollars which the District of Columbia fraudulently claimed as allowable

cost, did not have documentation to support and failed to report or repay the federal Medicaid accounts within the federally mandated time period. These funds were drawndown using Medicaid provider numbers assigned to the District of Columbia Public Schools Special Education Reimbursement Program.

3. Plaintiff alleges the District of Columbia government (through its contractor, Maximus Inc.,) did knowingly submit, false and unallowable reimbursement Medicaid claims, cost reports, information reports and/or demands for payment to the Federal Medicaid Program for fiscal years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003 and 2004 (See 2007 Settlement and Deferred Prosecution Agreement IN PART beginning on page 23)

4. Plaintiff alleges that the District of Columbia did knowingly engage in spoiliation of evidence . A party is responsible for spoliation "when the party has evidence within its control and fails to produce the evidence to negate constructive knowledge." A party also may be responsible for spoliation even if a third party disposes of the evidence. The District of Columbia Government did beginning 2008, knowingly and willfully withhold civil and criminal evidence from the Plaintiff and the Court during False Claims Act litigation before the Court (reference U.S. District Court cases 0489 and 0629) during the initial and subsequent Motions prepared and submitted to the Court by the District of Columbia.

> The law which has historically provided, omnia praesumuntur contra spoliatorem, or
> "all things are presumed against a despoiler or wrongdoer." This presumption is closely
> related to the statutory presumption that, if a party fails to produce evidence "in his power
> and within his reach," then "the charge or claim against him is well-founded

The presumption from withholding, suppression, or spoliation of evidence is rebuttable, and the jury decides whether it has been rebutted. If no effort has been made to rebut a presumption that concerns an essential element of a claim, the court may find against the spoliator as a matter of law. (Also see Appeal from the United States District Court for the District of Columbia (No. 1:06-cv-00629 )pages 7 and 8 and Davis II, 773 F. Supp. 2d at 32.

## The District of Columbia did knowingly and willfully defraud Federal Healthcare Programs to include:

Title XVIII and Title XIX, the Social Security Act and 42 U.S.C. 1395-1395ggg and 1396-1396c, Section 1903 (a)(6), 1903 (b)(3), and 1903(q) as amended by Medicare-Medicaid Anti-Fraud and Abuse Amendments (Pub. L. 95-142) and others as cited in the Complaint.  Plaintiff incorporates by reference: Case 1:06-cv-00629-JDB and United States District Court Case 1:06-cv-00489

**DISTRICT OF COLUMBIA  AS DEFENDANT,**

Specifically:

1.  The District OCFO (Maximus contracting Officer) knowingly amended the Maximus Inc.. contract to include retroactive claims which it knew could not be supported by Maximus or DCPS service documentation.

2.  The District has not disputed in Court Records that they were informed by Davis that neither they nor Maximus had documentation to support DCPS Medicaid reimbursement claims and cost reports which were being used to draw down federal Medicaid funds for DCPS.

3. Maximus Inc., deposition specifically states that the District of Columbia provided them with logs and paid claims files from which they developed, prepared and submitted claims and cost reports without documentation to support Medicaid reimbursement.

4. The District of Columbia was aware of the terms and conditions of the Settlement and Deferred Prosecution signed by the United States Departments of Justice, Health and Human Services, Maximus Inc. and Turner by virtue of the District Medical Assistance Administration amending cost reports to reduce Medicaid claims reimbursement by 12 million dollars consistent with the 2007 Settlement Agreement.

5. The District, during the past fourteen years has alternately claimed that its contractor Maximus had the services claims documentation, DCPS had the services claims documentation, other District agencies had the services claims support documentation, Davis, (as the District DCPS contractor) had the services claims support documentation, when in fact, during several meetings with Davis, the District acknowledged that neither it nor its contractor Maximus had the required Medicaid services claims service documentation to support Medicaid funds already reimbursed by the Federal Medicaid account.


6. The District of Columbia did knowingly divert (from DC General Hospital), Federal Medicare and Medicaid funds owed DC General Hospital thereby creating a violation of the FCA. The District of Columbia did knowingly, with intent to defraud Federal Medicare/Medicaid programs, submit claims, cost reports, cost information reports and other demands for payment with the intended purpose not to pay/reimburse a Medicare/Medicaid provider (DC General Hospital). The District of Columbia did knowingly and willfully making

false and fraudulent financial statements with regard to a federally supported health care provider
(the District of Columbia General Hospital & Clinics).

7. The District of Columbia did knowingly and willfully retain fraudulently obtained
Medicare/Medicaid funds owed (DC General Hospital) and with intent to defraud the United
States and did knowingly and willfully fail to notify CMS of a fraud and/or overpayment as
required by Titles XVIII and XIX federal regulations and the DOJ/HHS Maximus Corporate
Integrity Agreement, and the 2007 United States Settlement and Deferred Prosecution
Agreement

8. District Defendant did Fail to remit to CMS fraudulently obtained District-wide
Medicare/Medicaid funds as required in the 2007 Settlement Agreement. (See also FY 2007
AGENCY FINANCIAL REPORT U. S. DEPARTMENT OF HEALTH AND HUMAN
SERVICES | III- 2 IDENTIFIED BY THE OFFICE OF THE INSPECTOR GENERAL and *III-9
| U. S. DEPARTMENT OF HEALTH AND HUMAN SERVICES*

> *OIG is also working closely with DOJ to investigate and pursue False Claims Act cases
> concerning fraudulent billing of targeted case management and school-based health services. In a case
> settled in July 2007, the Federal Government entered into an agreement with Maximus, Inc., for 42.6
> million to settle allegations that Maximus caused the District of Columbia to submit false claims for
> targeted case management services that were never provided. As part of the settlement, Maximus also
> entered into a Corporate Integrity Agreement (CIA) with the OIG that contained several unprecedented
> provisions. Under the CIA, OIG will review Maximus's contracts and require dissemination of the review
> findings to Maximus's clients.*
>
> ***Fraud Enforcement and Recovery Act of 2009***
>
> *the Act defines proceeds in the money laundering statute (18 U.S.C. § 1956) as "any property derived from
> or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross
> receipts of such activity.*

9. By virtue of the above described acts, defendants knowingly presented or caused to be
presented false or fraudulent claims for payment or approval to the United States Government,

and knowingly failed to disclose material facts in order to induce the United States Government to pay or approve the false and fraudulent claims and/or cost reports.

10. By virtue of the above described acts, defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts in order to induce United States Government payment or approval of the false and fraudulent claims.

11. By reason of the payments and approvals, the United States Government has been damaged, and continues to be damaged by the District of Columbia by retention of medicare and Medicaid funds fraudulently obtained and/or retained in violation of the Social Security Act, Title XVIII, Title XIX, Federal Rules governing overpayments, fraud, false claims and cost reports, regulation and law. The damages sustained by the United States is substantial.

12. Notwithstanding any previous understandings, agreements or communications between the District of Columbia and CMS, neither can enter into an agreement which violate the Social Security Act, Title XVIII, Title XIX, Medicare/Medicaid fraud and abuse regulations with respect to false and fraudulent claims and/or cost reports, cost information reports and/or demands for payment and/or the False Claims Act.

## LEGAL STANDARD

The United States Supreme Court holds allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. On certiorari, the United States Supreme Court reversed. In a per curiam opinion, expressing the unanimous views of the court, it was held that since it did not appear beyond doubt that the inmate could prove no set of facts in support of his claim which would entitle him to relief, he was entitled to an opportunity

to offer proof. The only issue now before us is petitioner's contention that the District Court erred in dismissing his pro se complaint without allowing him to present evidence on his claims.

[***HR1] [***HR2] Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, [**596] however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears [*521] "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944).

[***HR3] Accordingly, although we intimate no view whatever on the merits of petitioner's allegations, we conclude that he is entitled to an opportunity to offer proof. The judgment is reversed and the case is remanded for further proceedings consistent herewith.

## STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73; 104 S. Ct. 2229 (1984)). The court "must take all the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff." Colburn v. Upper Darby Twp., 838 F. 2d 663, 665-66 (3d Cir. 1988). The U.S. Supreme Court addressed the liberal pleading standards set forth in Fed. R. Civ. P. 8(a)(2), by stating that the Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz 122 S. Ct. at 998-999. The Supreme Court further noted that the statement of facts must simply "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Id at 998. (quoting Conley v.

Gibson,355 U.S. 41, 47, 76 S.Ct. 99 (1957). Only notice pleading is required even when it may

Appear on the fact of the pleadings that a recovery is very remote and unlikely. See

Swierkiewicz at 997-998. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. at 997 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (U.S. 1974)) The Supreme Court further stated that the

standard relies on liberal discovery rules and summary judgment motions to define disputed

facts and issues and to dispose of unmeritorious claims. Id at 998. The pleading standard is a

liberal one and was adopted to focus litigation on the merits of a claim. Id at 999. Therefore,

Fed. R. Civ. Pro. 8(a)establishes a pleading standard without regard to whether a claim will

succeed on the merits.

**MEMORANDUM OPINION: Case 1:06-cv-00629-JDB Document 111 Filed 03/31/14** Page

17 of 28

### Physical Possession of Audit-Quality Documentation

The District's Medicaid plan allows for reimbursement of special-education costs only

"in accordance with Medicare's Principles of Reasonable Cost Reimbursements described

in 42 C.F.R. 413 Subparts A-G." See District Medicaid Plan § 9(a)(1). Those federal

Medicaid regulations, in turn, require health care providers to maintain documentation

that is "capable of verification by qualified auditors." 42 C.F.R. §§ 413.20, 413.24; see

also Ex. B to Pl.'s MSJ, Deposition of Heather Bennett McCabe, PhD. [ECF No. 99-5]

("McCabe Dep.") at 22 (Q: "Is the provider required to maintain the forms that document

the claims?" A: "Yes.").

**So did the District, in fact, maintain such documentation? The record is clear: it did**

**not.** See, e.g., Def.'s MSJ at 22; Ex C to Pl.'s MSJ, Deposition of Isaac Woode [ECF No.

99-6] ("Woode Dep.") at 34 (testifying that DCPS "didn't have the documentation"); Ex.

D to Pl.'s MSJ, Declaration of Isaac Woode [ECF No. 99-7] ("Woode Decl.") ¶ 12 ("DCPS did not have the required service-specific documentation."); Ex. I to Pl.'s MSJ [ECF No. 99-12] ("CMS Review") at 2 (CMS review of DCPS cost settlements explaining that "DCPS have not been able to produce all the requested information"). In fact, the District does not dispute the key fact here: the District did not have physical possession of the relevant documentation at the time DCPS submitted the Maximus Reports for payment.

In this round of summary judgment briefing, however, the District has seemingly abandoned this argument, and nowhere does it dispute Davis's argument that "[s]ubmission of the Maximus report[s] to MAA satisfies the False Claims Act requirement that claims be presented to the federal government." Pl.'s MSJ at 8. The District was wise to make this concession.   Medicaid—the text of the False Claims Act conclusively refutes the District's previous position. As the statute read at the relevant time, the statutory definition of a "claim" includes any request or demand . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

8.   **Case 1:06-cv-00629-JDB Document 111 Filed 03/31/14 Page 15 of 28**

A. The District "Presented" A Claim For Payment To The Federal Government.

In previous stages of this litigation, the District argued that presentation of a reimbursement claim to the MAA—a District of Columbia government agency—

could not lead to False Claims Act liability, because the claim for payment was not presented to the federal government. See Def.'s Opp'n to Pl.'s Mot. to Amend [ECF No. 76]

9. **On March 31, 2014, Judge Bates, United States District Court for the District of Columbia issued a conclusive Memorandum Opinion (unchallenged by the District of Columbia), Specifically:**

" **So did the District, in fact, maintain such documentation? The record is clear: it did not**"

Plaintiff respectfully submits that with the ruling by Judge Bates on 3/31/14, a cause of action and "Tolling" related to the July 20, 2007 Settlement and Deferred Prosecution Agreement between the Department of Justice, Department of Health and Human Services, the District of Columbia and its contractor Maximus, began.  Based on the Settlement Agreement, Maximus had ninety (90) days to comply with the terms of notification to al 50 states and the District of Columbia.  Further, the District having been fully aware and a party to the Agreement (reduction of claims and repayment of reimbursed Medicaid funds to CMS), had sixty (60) days within which to notify CMS of all overpayments associated with any and all programs dealing with Federal Healthcare Programs, which Plaintiff asserts included all District wide medicare and Medicaid reimbursements and payments for DC General Hospital, DC Public Schools FY 96-20004 and other District of Columbia demands for medicare and/or Medicaid payments.

There is no statute of limitations in the July 20, 2007 U.S Department of Justice, Department of Health and Human Services Settlement and Deferred Prosecution Agreement.

Further, the Settlement Agreement specifies how claims and cost are to be calculated for purposes of overpayments.

## 10. 2011 DC ATTORNEY GENERAL LETTER TO U.S. COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT – NON PAYMENT/DEFRAUDING FEDERAL HEALTHCARE PROGRAMS (MEDICARE AND MEDICAID)

Title 18 United States Code Section §§ 1005 and 1006: the intent to defraud or the intent to deceive. . See Baiocchi v. United States, 333 F.2d 32 (5th Cir. 1964); Harrison v. United States, 279 F.2d 19 (5th Cir.), cert. denied, 364 U.S. 864 (1960). The fact that a false entry was made is prima facie evidence of intent to defraud. See Phillips v. United States, 218 F.2d 385 (9th Cir. 1935).

The Criminal Health Care Fraud Statute (18 U.S.C. Section 1347) prohibits knowingly and willfully executing, or attempting to execute, a scheme or artifice:

• To defraud any health care benefit program; or

To obtain (by means of false or fraudulent pretenses, representations, or promises) any of the money or property owned by, or under the custody or control of, any health care benefit program; in connection with the delivery of or payment for health care benefits, items, or services. Proof of actual knowledge or specific intent to violate the law is not required.

### FALSE STATEMENTS (18 U.S.C. § 1014 and 1347)

Plaintiff asserts that in violation of 18 U.S.C. Section 1347, False statements relating to health care matters, the District of Columbia did knowingly and willfully make repeated false statements to the Federal Government, Congress, public and the Court with respect to the

financial status of DC General Hospital, and beginning ninety one day after the signing of the

July 20, 2007 Settlement Agreement, the financial status of District of Columbia health care

Departments and Agencies.  The District of Columbia, being fully aware of the terms and

conditions of the 2007 Settlement and Deferred Prosecution Agreement, did not notify (as

required by the Agreement and federal law, regulations and policy regarding overpayments

and/or fraudulent claims, cost reports and/or reimbursements) CMS and the U.S. Department of

Justice.

In his last assertion, Plaintiff presents overwhelming evidence that Defendants' statements

regarding the financial status of a federally funded healthcare facility (DC General Hospital)

were knowingly false, misleading, and deceptive in furtherance of a scheme to defraud.

**§ 1957.  Engaging in monetary transactions in property derived from specified unlawful**

**activity**.

(c)  In a prosecution for an offense under this section, the Government is not required to prove

the defendant knew that the offense from which the criminally derived property was derived was

specified unlawful activity.


**Case 1:06-cv-00629-JDB Document 111 Filed 03/31/14**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility

of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying

those portions of "the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials," which it believes

demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see also

Celotex, 477 U.S. at 323.

In determining whether there is a genuine dispute of material fact sufficient to preclude summary

judgment, the Court must regard the non-movant's statements as true and accept all evidence and

make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of

a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." Id. at

249-50 (citations omitted). Summary judgment, then, is appropriate if the nonmovant fails to

offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

> See, e.g., United States v. Shelburne, 2010 WL 2542054, at *2 (W.D. Va. June 24, 2010)
> ("[P]resenting a false claim to a 'state's Medicaid program is sufficient' for the FCA's
> presentment requirement because 'funds used to pay the claims are predominantly
> federal.'") (quoting United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr., 696 F. Supp.
> 2d 1190, 1200 (D. Idaho 2010) (noting near-unanimity of courts to have considered the
> question)); accord United States ex rel. Ven-A-Care v. Actavis Mid-Atlantic LLC, 659 F.
> Supp.  2d 262, 269 (D. Mass. 2009).

## UNDISPUTED FACTS:

1. The District of Columbia (and its contractor Maximus Inc.,) did knowingly and willfully present, submit and draw down Federal Medicare and Medicaid funds using provider numbers assigned to DC General Hospital for Federal/State healthcare program payments and reimbursements with intent to defraud the Medicare/Medicaid programs Federal Medicare and Medicaid Funds drawn down were knowingly and willfully diverted to other District of Columbia accounts and never paid/reimbursed to the DC General Hospital (a federally funded healthcare facility). Under the cost report certification it is the fact of the execution of the false certification on the yearly cost reports to Medicare that serves as the basis for FCA liability under 31 U.S.C. § 3729(a)(2). An argument that an FCA action could be predicated upon 42 U.S.C. § 1320a-7b(a). This section directs that any federal health care provider who knowingly retains any "benefit or payment" having knowledge that the provider is not entitled to receive it, and fails to disclose to the government that it is not entitled to said benefit or payment, will have committed a criminal offense. So a hospital, having declined to report its non-compliance with the state hospital regulations, yet nonetheless certifying compliance on its annual cost report with all pertinent instructions and regulations, caused the hospital's certifications to be false since it was not compliant with this law as well.

> *See DC Attorney General February 2011 Letter to Clerk,  United States Court
> of Appeals for the District of Columbia Circuit

2. The District of Columbia (and its contractor Maximus Inc.,) did knowingly and willfully prepare, present and submit to the United States,  claims, cost reports, cost information reports and other federal demands for payment for FY 96, 97, 98 and other fiscal years, for the District of Columbia Public Schools for which they knowingly did not have documentation to support.  Federal Medicaid funds were drawn down by the District of Columbia from the

Federal/State Medicaid Reimbursement accounts on behalf of the District of Columbia Public

Schools Special Education program without documentation that services claimed and billed were

ever provided (as stated in the claims, cost reports, cost information or demand for payment

documents submitted for reimbursement).

> *District witnesses (including the DCPS Chief of the Medicaid Recovery Unit) deposed by Plantiff's counsel stated that they (she) had never seen any documentation to support the Maximus cost reports for FY 96, 97 or 98. In written responses to deposition questions, Maximus states that they had used a "log book" given them by DC as support for the cost report. There were no signatures of providers, nor any documentation that services were actually provided to students in the "log book".*

> *See United States District Court Judge Bates Mem. Opp to which the District of
> Columbia has not disputed

3. **District defendants did knowing and willfully violate the 2007  Settlement and Deferred Prosecution Agreement, which states in part;**

"State Health Plan," specifying minimum criteria for coverage and payment of Medicaid

claims. See 42 U.S.C. § 1396a(a)(30)(A):

Pages six thru 9, beginning at  paragraph five of the Agreement which states that:

"Notwithstanding any term of this Agreement, specifically reserved and excluded from

the scope and terms of this Agreement as to any entity or person (including Maximus and

Relator) are the following claims of the United States:

    a. Any civil, criminal, or administrative liability arising under Title 26, U.S.C.

    Code (Internal Revenue Code);

    b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs and any disallowance action by CMS against the District of Columbia or its Medical Assistance Administration;

d. **Any liability** to the United States (or its agencies) for any conduct other than the Covered Conduct,

e. **Any liability** based upon such obligations as are created by this Agreement;

f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g. **Any liability** for failure to deliver goods or services due; and

h. Any civil or administrative liability of individuals (including current or former directors, officers, employees, agents, or shareholders of Maximus who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), who are indicted, charged, or convicted, or who enter into a plea agreement, related to the Covered Conduct".

Pages ten through eleven, beginning with paragraph 10
"Maximus agrees to the following;

a. **Unallowable Costs Defined**:  that all cost (as defined in the Federal Acquisition Regulation, 48 C.F.R. 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. 1395-1395ggg and 1396-1396c; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Maximus, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be

unallowable cost on government contracts and under the Medicare Program, Medicaid Program,

TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

(1) the matters covered by this Agreement and any related deferred prosecution agreement;

(2) the United States' audit (s) and civil and any criminal investigations (s) of the matters covered by this Agreement;

(3) Maximus's investigation, defense, and corrective actions undertaken in response to the United States' audit (s) and civil and any criminal investigation (s) in connection with matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement and any related deferred prosecution agreement;

(5) the payment Maximus makes to the United States pursuant to this Agreement and any payments that Maximus may make to Relator, including cost and attorneys fees;; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to:

(i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and

(ii) prepare and submit reports to the OIG-HHS.

However, nothing in this Paragraph 16.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based

on any other authority applicable to Maximus.  (All costs described or set forth in this Paragraph 16.a. are hereafter "unallowable costs.")

b.  **Future Treatment of "Unallowable Cost"**: Thesse unallowable costs shall be separately determined and accounted for by Maximus, and Maximus shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any State or District of Columbia Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by Maximus or any of its subsidiaries or affiliates to the medicare, Medicaid, TRICARE, or FEHBP Programs.

c.  **Treatment of Unallowable Costs Previously Submitted for Payment:**  Maximus further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers,  and/or contractors, and Medicaid and FEHBP fiscal agents, any unallowable costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State or District of Columbia Medicaid program, including, but not limited to, payments requests already submitted by Maximus or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs.  Maximus agrees that the United States, at a minimum, shall be entitled to recoup from Maximus any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously submitted cost reports, information reports, cost statements, or request for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Maximus or any

of its subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in this

Paragraph) on Maximus or any of its subsidiaries or affiliates' cost reports,, cost statements, or

information reports.

     d. Nothing in this Agreement shall constitute a waiver of the rights of the United States

to audit, examine, or re-examine Maximus's books and records to determine that no unallowable

cost habe been claimed in accordance with the provisions of this Paragraph.

11. Maximus agrees to cooperate fully and truthfully with the United States' investigation of

individuals and entities not released in this Agreement.  Upon reasonable notice, Maximus shall

make reasonable efforts to facilitate access to, and encourage the cooperation of, its directors,

officers, and employees for interviews and testimony, consistent with the rights and privileges of

such individuals, and shall furnish to the United States, upon reasonable request, all

nonprivileged documents and records in its possession, custody, or control relating to the

Covered Conduct.

12. This Agreement is intended to be for the benefit of the Parties only.  The Parties do not

release any claims against any other person or entity, except to the extent provided for in

Paragraphs 2, 3, and 4 above.

13. Maximus waives and shall not seek payment on behalf of itself or any other entity for any of

the health care billings covered by this Agreement from any health care beneficiaries or their

parents, sponsors, legally responsible individuals, or third party payors based upon the claims

defined as Covered Conduct".

## **CONCLUSION**

### **Based on facts not in dispute:**

1. The terms and conditions of the 2007 U.S.  District Court for the District of Columbia approved Settlement and Deferred Prosecution Agreement which Plaintiff asserts was intentionally withheld from U.S. District Court Judge Bates (06-0629), U.S. District Court Judge Motz (sitting by designation) (06-0489) and the United States Court of Appeals for the District of Columbia Circuit on Appeal.

2. The February 2011 DC General Hospital Letter to Mr. Langer, Clerk of the United States Court of Appeals for the District of Columbia Circuit from the District of Columbia Attorney General.

3. Federal regulations, policies and/or legislation governing payments, reimbursements, overpayments, fraud and reporting of Federal funds obtained by fraudulent means, involving Federal Healthcare Programs (Medicare and Medicaid)

and

4. The 3-31-14 Mem. Opp ruling by U.S. District Court Judge John D. Bates with respect to claims documentation support in case number 1:06-cv-0629,

Plaintiff respectfully asserts that there are no issues or disputes of fact or law that Defendant can reasonably present to refute and/or offer as a defense against allegations contained in this Complaint.

WHEREFORE, Plaintiff prays for judgment against defendant as follows:

1) That this Court affirm the terms and conditions of the 2007 Settlement and Deferred Prosecution Agreement between the United States Departments of Justice and Health and Human Services related to "Unallowable Cost" charged against Federal Healthcare Programs by Maximus Inc., and by extension the District of Columbia. Plaintiff asserts that affirmation of the District Court approved Settlement and Deferred Prosecution Agreement, will resolve a conflict between the Agreement and the 3-31-14 Mem. Opp ruling by Judge Bates with respect to counting the number of claims, charges, "Unallowed cost and the issue of the Eight Amendment which prohibits the imposition of "Excessive Fines and Penalties".

2) That this Court Order and compel Defendant and their contractor (Maximus Inc.,) to comply with the terms of the 2007 Settlement and Deferred Prosecution Agreement with respect to calculating the number and amounts of claims, cost reports, cost information reports and other demands for payment amounts to CMS, by the District of Columbia, resulting from the application of "Unallowable" cost and charges to Federal Healthcare Programs.

### The Requested Disgorgement Does Not Constitute Punishment and Hence Does Not Violate the Eighth Amendment "Excessive Fines and Penalties"

3) That this Court enter judgment against Defendants in an amount equal to the amount of Medicare and Medicaid payments and/or reimbursements received but not remitted to the District of Columbia General Hospital as required by the Social Security Act, Medicare and

Medicaid reimbursement policy and procedures, and failure to notify CMS of overpayment and retention of fraudulently obtained DC General Hospital Medicare and Medicaid funds as acknowledged in the 20011 District of Columbia Attorney General Letter.

> *Equitable disgorgement. As the Court has recognized previously, any disgorgement award will reflect the amount that Plaintiff has adequately proven is a reasonable approximation of proceeds causally related to Defendants' fraudulent activity. See, e.g., United States v. Philip Morris USA Inc., 2004 WL 1161455 (D.D.C. May 21, 2004); United States v. Philip Morris USA, 310 F. Supp. 2d 58, 63-64 (D.D.C. 2004) (discussing SEC v. First City Fin. Corp., 890 F.2d 1215, 1230-31 (D.C. Cir. 1989)).*

4) That this Court Order the Defendant District of Columbia to cease and desist violations of (18 U.S.C. § 1014 and 1347) False Statements and knowingly and willfully attempting to defraud a Healthcare Program, Sec. 1623. False declarations before grand jury or court, specifically where Maximus Inc., was the District contractor.

5) That this Court Order Defendant District of Columbia to comply with (b) Section 1903(d)(2) (C) and (D) of the Act (60 day notification to CMS of overpayment), specifically related to any claims, cost reports, cost information reports, and/or demands for payment where Maximus Inc. was the District contractor.

6) That this Court Order Defendant District of Columbia to correct the false and misleading public statements previously made regarding the financial status of the District of Columbia General Hospital. See See, e.g., Novartis Corp. v. FTC, 223 F.3d783, 787-89 (D.C. Cir. 2000); Warner-Lambert Co. v. FTC, 562 F.2d 749, 759-61 (D.C. Cir.1977).

7) That this Court issue Estoppel instructions prohibiting District Defendant and their Contractor (Maximus Inc.) from presenting before this Court future defenses contrary to or in contradiction of the February 2011 DC General Hospital Letter to Mr. Langer, Clerk of the

United States Court of Appeals for the District of Columbia Circuit from the District of Columbia Attorney General.

     8) That this Court issue Estoppel instructions prohibiting District Defendant and their Contractor (Maximus Inc.) from presenting before this Court future defenses contrary to or in contradiction of the February 2011 DC General Hospital letter to Mr. Langer, Clerk of the United States Court of Appeals for the District of Columbia Circuit from the District of Columbia Attorney General.

On March 31, 2014 Memorandum Opinion Ruling issued by District Court Judge Bates, not disputed and unchallenged by the District of Columbia), Specifically:

   **" So did the District, in fact, maintain such documentation? The record is clear: it did not"**

     9) That Plaintiff and the United States be awarded such other relief as this Court deems proper.

In the Alternative, Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this matter on all issues so triable.

          Respectfully submitted

          Michael L. Davis

Date: December 22, 2014

**EXHIBIT A**

4.  Title 42: Public Health

PART 433—STATE FISCAL ADMINISTRATION

Subpart F—Refunding of Federal Share of Medicaid Overpayments to Providers

Source: 54 FR 5460, Feb. 3, 1989, unless otherwise noted.

§ 433.300 Basis.

This subpart implements—

(a) Section 1903(d)(2)(A) of the Act, which directs that quarterly Federal payments to the States under title XIX (Medicaid) of the Act are to be reduced or increased **to make adjustment for prior overpayments or underpayments that the Secretary determines have been made**.

**(b) Section 1903(d)(2) (C) and (D) of the Act, which provides that a State has 60 days from discovery of an overpayment for Medicaid services to recover or attempt to recover the overpayment from the provider before adjustment in the Federal Medicaid payment to the State is made; and that adjustment will be made at the end of the 60 days, whether or not recovery is made, unless the State is unable to recover from a provider because the overpayment is a debt that has been discharged in bankruptcy or is otherwise uncollectable.**

(c) Section 1903(d)(3) of the Act, which provides that the Secretary will consider the pro rata Federal share of the net amount recovered by a State during any quarter to be an overpayment.

Abuse (in accordance with §455.2) means provider practices that are inconsistent with sound fiscal, business, or medical practices, and result in an unnecessary cost to the Medicaid program, or in reimbursement for services that are not medically necessary or that fail to meet professionally recognized standards for health care.

**Discovery (or discovered ) means identification by any State Medicaid agency official or other State official, the Federal Government, or the provider of an overpayment, and the communication of that overpayment finding or the initiation of a formal recoupment action without notice as described in §433.316.**

**Fraud (in accordance with §455.2) means an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other person. It includes any act that constitutes fraud under applicable Federal or State law.**

**Overpayment means the amount paid by a Medicaid agency to a provider which is in excess of the amount that is allowable for services furnished under section 1902 of the Act and which is required to be refunded under section 1903 of the Act.**

**§ 433.312 Basic requirements for refunds.**

**(a) Basic rules. (1) Except as provided in paragraph (b) of this section, the Medicaid agency has 60 days from the date of discovery of an overpayment to a provider to recover or seek to recover the overpayment before the Federal share must be refunded to CMS.**

**(2) The agency must refund the Federal share of overpayments at the end of the 60-day period following discovery in accordance with the requirements of this subpart, whether or not the State has recovered the overpayment from the provider**

**(d) Overpayments resulting from fraud or abuse. An overpayment that results from fraud or abuse is discovered on the date of the final written notice of the State's overpayment determination that a Medicaid agency official or other State official sends to the provider.**

**§ 455.18 Provider's statements on claims forms.**

(a) Except as provided in §455.19, the agency must provide that all provider claims forms be imprinted in boldface type with the following statements, or with alternate wording that is approved by the Regional CMS Administrator:

(1) "This is to certify that the foregoing information is true, accurate, and complete."

(2) "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws."

(b) The statements may be printed above the claimant's signature or, if they are printed on the reverse of the form, a reference to the statements must appear immediately preceding the claimant's signature.

**§ 455.20 Recipient verification procedure.**

(a) The agency must have a method for verifying with recipients whether services billed by providers were received.

(b) In States receiving Federal matching funds for a mechanized claims processing and information retrieval system under part 433, subpart C, of this subchapter, the agency must provide prompt written notice as required by §433.116 (e) and (f).

[48 FR 3756, Jan. 27, 1983, as amended at 56 FR 8854, Mar. 1, 1991]

## 5. TOLLING OF REOPENED COST REPORTS

42 CFR 405.1885 - Reopening an intermediary determination or reviewing entity decision.

(3) Reopening of a determination procured by fraud or similar fault. A Secretary or intermediary   determination or decision by the reviewing entity may be reopened and revised at any time if it        is established that the determination or decision was procured by fraud or similar fault of any  party to the determination or decision.

## 6.    Case 1:06-cv-00629-JDB Document 88-7 Filed 06/11/10 Page 38 of 56

The DC Auditor Reports states that it is the policy of DCPS to bill Medicaid transportation claims only for Medicaid eligible children who are transported for the purpose of receiving a Medicaid          approved service and therefore the billing of transportation claims is dependent on having a        Medicaid allowable service provided on the same day as transportation is claimed.

1. 42 C.F.R. § 413.20(a); see also id. § 413.24(a). "To ensure that the claimed services were actually provided, auditors check for financial documentation and review student files for service-specific medical records or progress notes signed by the actual service provider." Davis, 679 F.3d at 834. Claims lacking the required service-specific documentation are not reimbursed. See, e.g., 42 C.F.R. §§ 413.20, 413.24(a), 413.24(c).


42 U.S. Code § 1396a - State plans for medical assistance

(a)      Contents : A State plan for medical assistance must—


(B)  provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program;

4.4 Record Keeping

Providers shall retain for a minimum of ten (10) years (unless otherwise specified), medical and fiscal records that fully disclose the nature and extent of the services rendered to beneficiaries. These records must meet all of the criteria established. Providers shall make such records readily available for review and copying by District and Federal officials or their duly authorized agents

Absent documentation, (as required by Title XIX of the Social Security Act, Section 411 (K)(13) of the Medicare Catastrophic Coverage Act of 1988 amended Section 1903 (c) to permit Medicaid payments for medical and health related services provided to children in special education programs who are determined Medicaid eligible), the FY 96, 97, 98, 99, 2000, 2001, 2002,, 2003 and 2004 DCPS Medicaid Reimbursement cost reports, cost information reports, demands for payments and  claims prepared by Maximus and submitted by the District of Columbia were false, fraudulent, and/or overpayments in their entirety.

A.       the government,  may reopen an intermediary's reimbursement determination "at any time" if it is alleged that an overpayment had been procured by fraud or the fault of the provider. (see Sebelius v. Auburn Regional Medical Center, No. 11-1231 (Jan. 22, 2013),

(b) Section 1903(d)(2) (C) and (D) of the Act, which provides that a State has 60 days from discovery of an overpayment for Medicaid services to recover or attempt to recover the overpayment from the provider before adjustment in the Federal Medicaid payment to the State is made; and that adjustment will be made at the end of the 60 days, whether or not recovery is made.  This mandatory  tolling date for the District notification to CMS  of false, fraudulent or overpayments of DCPS claims, cost reports and/or overpayments would have begun on the 91st day after the effective date of the Settlement and Deferred Prosecution Agreement was signed (July 20, 2007).

Fraud (in accordance with §455.2) means an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other person. It includes any act that constitutes fraud under applicable Federal or State law.

**EXHIBIT B**

5 U.S.C. § 702 : US Code - Section 702: Right of review –

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An

action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 703 : US Code - Section 703: Form and venue of proceeding.

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C. § 704 : US Code - Section 704: Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § Sections 706 (1), (2) (A,B,D) US Code - Chapter 7: JUDICIAL REVIEW- SCOPE OF REVIEW

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall - (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be - (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error

**EXHIBIT C**

<u>FALSE CLAIMS  AND FRAUD  REFERENCE VIOLATIONS</u>

2.  United States Court of Appeals Fifth Circuit

**UNITED STATES OF AMERICA, ex rel. JAMES H. GRUBBS, M.D.**

The Eleventh Circuit's statement that without presentment "there is simply no actionable damage to the public fisc as required under the False Claims Act," U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002), is incorrect to the extent that it is not limited to section (a)(1) and adds a damages element to the False Claims Act, requiring payment in addition to presentment. The statute offers a civil penalty for proof of fraudulent claims whether or not paid. What § 3729(a)(2) requires is that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government. For this section, the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute;

Section 3729(a)(3) subjects to civil liability any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." We have held that to prove a False Claims Act conspiracy, a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and

(2) at least one act performed in furtherance of that agreement." The particularity requirements of Rule 9(b) apply to the False Claims Act's conspiracy provision with equal force as to its "presentment" and "record" provisions. As the D.C. Circuit has stated, a plaintiff alleging a conspiracy to commit fraud must "plead with particularity the conspiracy as well as the overt acts . . . taken infurtherance of the conspiracy."(see U.S. ex rel. Farmer v. City of Houston, 523 F.3d 333, 343 (5th Cir. 2008).

As in § 3729(a)(2), the conspiracy provision lacks a presentment element, thus presentment of a false claim need not be proven nor pled to prevail on a False Claims Act conspiracy charge. (see FC Inv. Group LC v. IFX Markets, Ltd., 529 F.3d 1087, 1097 (D.C.Cir. 2008). The court's analysis was couched as jurisdictional, but the statement holds true as a purely procedural pleading requirement.


3. **United States ex rel. McCoy v. California Medical Review**, Inc., 715 F. Supp. 967 (N.D. Cal. 1989). which a Medicare fiscal intermediary was accused of failing to properly conduct claims reviews. The government argued that damages should include not only payments to the intermediary for reviews that were not conducted but all payments made by the government to claimants that would not have been made but for the defendant's misfeasance.

**MICHAEL L. DAVIS V.  DISTRICT OF COLUMBIA**

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Complaint was served on the Office of the Attorney General for the District of Columbia on 12-22-14

In addition

a copy of this certificate was delivered by courier, this 22nd day of December 2014 to

Attorney General for the District of Columbia

441 4th Street, NW, Washington, DC 20001

Phone: (202) 727-3400

Fax: (202) 347-8922

TTY: (202) 727-3400

Email:dc.oag@dc.gov


FOR OFFICE OF THE ATTORNEY GENERAL_____DATE_____


Michael L. Davis

1717 Trinidad Ave NE

Washington, DC 20002

202 255 3370

M1mld@aol.com